Edward L. DALTON, Appellant,

v.

TEXAS SULPHUR PRODUCTS, INC.,
Appellee.

No. 8241.

Court of Civil Appeals of Texas,
Amarillo.

June 12, 1972.

Edwards, Smith & Associates, Michael R. Miller, Amarillo, for appellant.

Culton, Morgan, Britain & White, Jess C. Dickie, Amarillo, for appellee.

JOY, Justice.

This is an appeal from an instructed verdict entered in favor of defendant-appellee Texas Sulphur Products, Inc., and against plaintiff-appellant Edward L. Dalton.

Affirmed.

The facts of this case are essentially undisputed. Appellant, Edward L. Dalton, was an employee of Well Treating Service owned by a Mr. Carl Saxon. Appellee, on March 19, 1970, employed Well Treating Service to haul liquid fertilizer from the Sneed Plant of appellee, Texas Sulphur Products, Inc., to appellee's storage tanks located near Sanford, Texas. While at the Sanford location, appellant attempted to measure the contents of one of several large storage tanks and in the process he caused a metal pole to come into contact with an electric line located above and behind the tank the appellant was standing upon. Appellant received severe burns to his hands and was thrown off the tank as a result of the electrical shock.

Thereafter, appellant filed suit against appellee contending various acts of negligence on the part of appellee, and that such acts of negligence culminated in appellant's sustaining personal injuries. Appellant's allegations of negligence are based upon the contention that appellee did not keep his premises in a reasonably safe condition through appellee's following acts or omissions: (1) the failure to warn appellant of the close proximity of the electrical line; (2) failure to provide adequate devices for measuring the contents of the tanks; (3) by the improper placement of the tanks; (4) failure to warn appellant of the dangers involved in measuring the tanks; (5) the failure to place hand rails, guards, etc. on the tanks; (6) failure to properly instruct the appellant of his duties; and, (7) that appellee was negligent in placing the ladder end of the tank near the electric lines. Appellee answered asserting, in part, various affirmative defenses and contending primarily that appellee owed "no duty" to appellant under the circumstances surrounding his accident. At the close of the appellant's evidence, appellee presented to the court a motion for instructed verdict predicated upon the ground that it owed "no duty" to appellant relying upon the doctrine of "open and obvious." The trial court granted the motion of appellee and entered judgment that the appellant take nothing. Appeal was duly perfected seeking review of that judgment.

Appellant's first point of error states that the trial court erred in granting the appellee's motion for instructed verdict because it had not been conclusively proved that the appellee owed no duty to the appellant. Appellant's remaining two points of error relating to the sufficiency of evidence to raise fact issues are material only if his first point is sustained. Appellee relies upon the doctrine of "open and obvious" contending it owed "no duty" to appellant, and further that there is no evidence to warrant the submission of any issues based upon the allegations in appellant's first amended petition.

The test to be applied by an appellate court when considering the propriety of an instructed verdict is that such court should view all testimony adduced on the trial in the light most favorable to the losing party, disregarding all conflicts in testimony, and indulging in every reasonable

deduction in favor of the party against whom the instructed verdict was granted. Godwin v. Roberts, 213 S.W.2d 571 (Tex. Civ.App.—Galveston 1948, writ ref'd n. r. e.); Humphreys v. Haragan, 476 S.W.2d 880 (Tex.Civ.App.—Amarillo 1972, no writ). If, under this test, there is no evidence to raise a fact issue to go to the jury, or the moving party is entitled to judgment as a matter of law, then the instructed verdict must be affirmed on appeal. Constant v. Howe, 436 S.W.2d 115 (Tex.Sup.1968); Shubert v. Fidelity & Casualty Company of New York, 467 S. W.2d 662 (Tex.Civ.App.—Houston (1st Dist.) 1971, writ ref'd n. r. e.). Therefore, a review of the evidence in conjunction with the applicable principals of the "no duty" doctrine is required.

▆▆ An occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. Genell, Inc. v. Flynn, 163 Tex. 632, 358 S.W.2d 543 (1962). If there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them no duty to warn or to protect the invitees. In a suit by an invitee against the occupier, the invitee must prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, and further he must prove that the occupier owed him a duty to take reasonable precautions to warn or protect him from such danger, i. e., he must negative "no duty." Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963). When a condition is patently open and obvious and the danger apparent, and when the plaintiff has encountered it many times, he will be charged in law with knowledge and appreciation of the danger and the occupier owes him no duty. Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 874 (1948). Seideneck v. Cal Bayreuther Associates, 443

S.W.2d 75 (Tex.Civ.App.—Eastland 1969, aff'd at 451 S.W.2d 752 (Tex.Sup.1970)). "Logically, whether a defect is so plain that anyone should see it is a law question." See: Baylor University: Greenhill, Assumption of Risk, 16 Baylor L. Rev. 111 (1964).

▆▆ Appellant, on the day of the accident, drove his truck onto the premises of appellee coming from the east and approached a riser sticking up out of the ground which was used to connect the hose on the truck onto the riser in order to pump liquid into the fertilizer tanks. He turned his truck to the north facing the electric lines and hooked the truck hose up to the riser. He then walked to the west and down to the north end of the tanks which would be alongside and below the electric lines. When he got to the tanks, he opened a valve located on the north end of each tank. He had followed this procedure on prior occasions. As a matter of course, he would come from the east, driving in a westerly direction with the electric poles and lines in view. Then he would turn his truck around to head it north sweeping the entire terrain within the scope of his vision. It is undisputed that appellant had been to the premises on several occasions before March 19, 1970. Appellant stated that he had been to the premises of appellee at least three times by himself and at least on one other occasion with another driver to fill the fertilizer tanks. Appellant, on the day of the accident, followed essentially the same procedure with the exception of the measuring process as he had on previous occasions when he was directed to fill the fertilizer tanks as heretofore described. He stated that he climbed upon the ladder located on the north end of the tank, brought the metal pipe up holding it with both hands, flipped it over his left shoulder in an arc, and struck the electric line.

When questioned about his knowledge and appreciation of electricity and the danger appurtenant thereto, appellant stated:

"Q. And at any rate, you knew that it was dangerous to contact an electric line, didn't you?

"A. Yes, sir.

"Q. You knew that at the time, didn't you?

"A. Yes, sir.

"Q. And you knew it was dangerous to make contact with an electric line with a metal object, didn't you?

"A. Yes, sir.

"Q. Such as a piece of pipe. You knew if you contacted an electric line with a piece of pipe that it was dangerous, didn't you?

"A. Yes sir.

"Q. And yon knew you were apt to get hurt, didn't you?

"A. Yes, sir."

Appellant's own testimony reveals that he knew and appreciated the danger involved in touching a metal pole against an electric line; thus, the question becomes whether or not the circumstances are such that he can be charged with knowledge of the line, i. e., was the electric line so open and obvious that he cannot now be heard to say that he did not see it. When questioned about his knowledge of the existence of the electric lines, appellant testified as follows:

"Q. Even though you knew for over an hour that you were going to gauge it with a metal pipe, knew there were lines in the vicinity, and knew that it was dangerous, you didn't even look to see where the lines were?

"A. No.

"Q. All right. If you had looked, you would have seen the lines, wouldn't you?

"A. Yes, sir.

"Q. And if you had looked and seen the lines, it wouldn't have happened, would it?

"A. Right."

The record also contains testimony of other witnesses to the effect that the electric lines were clearly visible to anyone who came on or near the premises of appellee.

Further, eight photographs were introduced into evidence which showed the electric lines to be clearly visible to anyone who came near the premises. The salient portions of appellant's testimony amount to the basic fact that he simply did not see the electric lines even though the lines were clearly not concealed or hidden in any manner, and he had been there on several other occasions.

The case of Marshall v. San Jacinto Building, Inc., 67 S.W.2d 372 (Tex.Civ. App.—Beaumont 1933, writ ref'd) announced the rule in Texas regarding the "no duty" doctrine. In that case, the plaintiff tripped over a slight rise from the sidewalk to a building entrance. There, as here, the plaintiff had been to the premises on several occasions before the accident occurred and the plaintiff testified that he did not notice the condition. There, as here, several photographs were introduced into evidence reflecting that the condition complained of was clearly visible. In that case, as in the case before us, the trial court instructed a verdict for the defendant. The trial court's instructed verdict was upheld on the basis of "no duty" reasoning that under the facts of the case the defendant was charged with knowledge of the condition. Subsequently in Hausman Packing Co. v. Badwey, 147 S.W.2d 856 (Tex.Civ.App.—San Antonio 1941, writ ref'd), a judgment was rendered for the defendant on the basis of the Marshall decision. As noted in Halepeska v. Callihan Interests, Inc., supra, the holding in the Hausman Packing Co. case is as follows:

". . . Being charged with full knowledge of these obvious defects . . . he

cannot recover for personal injuries caused by such defects or condition."

We believe the most recent decisions in this area follow the decision in the Marshall case where the circumstances are strikingly similar to those in the case before us, and that the Marshall case controls the disposition of this case. We, therefore, hold that appellee owed "no duty" to appellant under the facts of this case. The condition complained of here was open and obvious and appellant is charged as a matter of law with knowledge thereof. We overrule appellant's first point of error and, having found no duty on the part of appellee, deem it unnecessary to rule upon the remaining two points of error. There being no duty owed to appellant as to the condition here complained of, there can be no breach of a duty.

The judgment of the trial court is affirmed.