Shirley **WHITEHEAD**

v.

**UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, et al.**

No. 04–92–00412–CV.

Court of Appeals of Texas, San Antonio.

March 31, 1993.

James A. Kosub, Kosub & Gaul, San Antonio, for appellant.

Leo L. Barnes, Asst. Atty. Gen., Gen. Litigation Div., Austin, for appellee.

Before REEVES, C.J., and CHAPA and RICKHOFF, JJ.

CHAPA, Justice.

Appellant, Shirley Whitehead, appeals a directed verdict granted in favor of appellees, the University of Texas Health Science Center at San Antonio, the Board of Regents of the University of Texas system, and four employees of the Health Science Center. For the reasons stated, we affirm.

The issues before this court are:

1) whether state employees may be protected from liability by the doctrine of sovereign immunity;

2) whether there was a breach of appellant's employment contract; and,

3) whether appellant was deprived of due process when she was terminated.

Whitehead's case stems from an alleged confrontation she had with John Carter, a doctor and assistant professor in the Divi-

sion of Neurology in the university's Department of Medicine. Whitehead had worked in Neurology as a senior secretary. During her tenure there, she complained about Carter's violation of the university's inventory procedures and thus became the alleged victim of Carter's harassment and abusive behavior.

Later, Whitehead sought and obtained a transfer to work as a senior secretary in the Geriatric Education Center of the Department of Dental Diagnostic Science. In her new position, Whitehead worked under Lavonne Banse, an administrative secretary who was Whitehead's immediate supervisor. Whitehead also worked under Stella Schwab, an administrative assistant in the Department of Dental Diagnostic Science who handled personnel matters. She also worked under Michele Saunders, the director of the Geriatric Education Center.

On April 10, 1987, Whitehead went to Neurology to use a photocopier since the one in her department was broken. After she made copies, she stopped by the office of her friend Diana Reyes. She allegedly spoke to Reyes about a personal matter and two work-related matters. While Whitehead spoke to Reyes, John Carter stopped at the door and asked why Whitehead was in the Neurology division. He allegedly became upset and refused to let Whitehead leave until she told him why she was there. Whitehead claimed at one point she tried to leave, but was pushed back by Carter's body as he stood sideways in the doorway. Carter admitted that he briefly blocked the exit. Whitehead returned to her office and reported to her superiors and to university police that she was harassed by Carter.

Later, Banse and Saunders met with Whitehead on April 20. Due to Whitehead's confrontation with John Carter and prior incidents, Banse and Saunders complained to Whitehead that she was frequently out of the office, that she abused her lunch hour, that she was a slow worker, and that she was disrespectful. A written reprimand was signed on April 20, but Whitehead refused to accept it. Whitehead claims she did not receive the reprimand until April 30, the day she was fired.

On April 30, Whitehead was called to a meeting with Schwab, Saunders, and Banse. Again, Whitehead's superiors complained about her conduct and work performance. The confrontation with John Carter was discussed as an example of Whitehead's frequent absences from the office. Whitehead was provided with a written list of her secretarial duties. Schwab allegedly told Whitehead that she must comply with them. Whitehead was also told she must follow the instructions in the written reprimand, one of which said she could no longer go to Neurology during work hours. Schwab and Saunders testified that Whitehead refused to fulfill her duties or to comply with their instructions.

Whitehead claimed she never refused to do her duties. She said that she only told them she "did not see how they could ask me to stay away from neurology." Whitehead also said she was asked to admit that she behaved improperly with John Carter, to which Whitehead said, "I can never admit to something of which I am not guilty." Schwab terminated Whitehead that day for insubordination.

Afterward, Whitehead filed an appeal of termination under the university's grievance policies. A hearing was scheduled, but Whitehead called to reschedule it. In a letter to Whitehead's attorney, the university said that the hearing could be postponed until a mutually convenient time. Whitehead never got back with the university to set up a new hearing.

On August 10, 1988, Whitehead filed this lawsuit against the Health Science Center and the Board of Regents. Also named in the suit were John Carter, Michele Saunders, Stella Schwab, and Lavonne Banse, in their individual and official capacities. In her pleadings, Whitehead raised the following causes of action: (1) she suffered severe emotional distress and humiliation due to the assault, battery and false imprisonment inflicted by John Carter; (2) that Saunders, Schwab and Banse retaliated against Whitehead or failed to stop the retaliation against her for exercising her

First Amendment rights under the federal constitution, such as the right to petition for redress of grievances and the right of association; (3) that Saunders, Schwab and Banse deprived her of procedural and substantive due process by not complying with the university's discipline policies before Whitehead's termination; and (4) that all the defendants named in her pleadings breached her employment contract. Whitehead sought injunctive relief for reinstatement of job, $250,000 in compensatory damages, $100,000 in punitive damages, back pay and attorney fees.

A jury trial began on March 18, 1991. After the presentation of appellant's evidence, appellees orally moved for a directed verdict. Arguments were heard before the court on March 20 and 21, 1991. The court granted directed verdict on each of the four causes of action. A final judgment was entered on April 2, 1992 against appellant. Pursuant to appellant's request, the court also filed findings of facts and conclusions of law on June 1, 1992.

 Findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. *First Nat. Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). Unless the trial court's findings of facts are challenged by a point of error on appeal, they are binding upon the appellate court. *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.) (citing *Zelios v. City of Dallas*, 568 S.W.2d 173, 175 (Tex.Civ. App.—Dallas 1978, writ ref'd n.r.e.)). Conclusions of law are reviewable when attacked as erroneous as a matter of law, but not when attacked on grounds of sufficiency of the evidence to support them, as if they were finding of fact. *Kinabrew*, 589 S.W.2d at 146; *see also Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.).

"The test to be applied by an appellate court when considering the propriety of an instructed verdict is that such court should view all testimony adduced on the trial in light most favorable to the losing party, disregarding all conflicts in testimony, and indulging in every reasonable deduction in favor of .the party against whom the instructed verdict was granted.... If, under this test, there is no evidence to raise a fact issue to go to the jury, or the moving party is entitled to judgment as a matter of law, then the instructed verdict must be affirmed on appeal." *Louis v. Parchman*, 493 S.W.2d 310, 313 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.); *Dalton v. Texas Sulphur Products, Inc.*, 482 S.W.2d 24, 25–26 (Tex.Civ.App.—Amarillo 1972, no writ).

On appeal, Whitehead raises four points of error of which we have isolated three distinct issues as set forth at the beginning of this opinion. We limit our review to these points in deciding whether the motion for directed verdict was correctly granted. *See* Tex.R.App.P. 74(d). *See also Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex.1991); *Peterson v. Dean Witter Reynolds, Inc.*, 805 S.W.2d 541, 552 (Tex.App.—Dallas 1991, no writ).

In her first point of error, Whitehead contends that "the trial court erred in granting sovereign immunity to employees sued individually and in their official capacity because the law recognizes suits against individual public employees sued under 42 U.S.C. 1983."[1] Although Whitehead's one-paragraph argument is somewhat unclear, it appears she complains that her causes of action against the four public employees named in her pleadings were improperly barred because the trial court invoked sovereign immunity to protect state employees from liability for both individual and official acts.

---

1. The statute reads:

Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... [Emphasis added.]

42 U.S.C. § 1983 (1988).

Before analyzing this question, we initially note three defects in her complaint. First, no where does the record show that the trial court invoked sovereign immunity to protect the public employees from liability for acts committed in their individual capacity. Also, Whitehead fails to direct this court to any place in the record which would support this allegation. *See* TEX. R.APP.P. 74(f). The record only shows that the court applied sovereign immunity to protect the state government and its agencies from liability.

■ Second, Whitehead lodges no complaint about whether the trial court incorrectly invoked the doctrine of "official immunity" to protect the four employees named in her suit from liability. Unlike sovereign immunity, "official immunity" protects public employees from liability for acts committed in their individual or personal capacity. *See Baker v. Story*, 621 S.W.2d 639, 644 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). Because this is not raised as a point of error, we will limit our discussion to sovereign immunity and refrain from addressing "official immunity." TEX.R.APP.P. 74(d).

■ Third, Whitehead fails to challenge any of the trial court's findings of facts. Unless the trial court's findings are challenged by a point of error, they are binding upon the appellate court. *Wade*, 602 S.W.2d at 349. The court granted the motion for directed verdict because it held as a matter of fact that the public employees named in her suit did not commit any of the infractions alleged in the pleadings. For example, the findings of facts state that Whitehead was not falsely imprisoned or subjected to assault and battery, that Whitehead's superiors did not infringe upon her First Amendment rights or her rights under the Due Process Clause, and that the defendants did not breach any employment contract. Because no point of error is raised, we are bound by these findings of facts, regardless of whether the trial court incorrectly applied any immunities to protect the public employees from liability.

Returning to the point of error at hand, Whitehead contends that in the case of *Hafer v. Melo*, 502 U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United States Supreme Court removed the sovereign immunity that previously protected public employees from liability in Section 1988 causes of action.

After reviewing the case, we conclude that it changed no previous law regarding sovereign immunity as applied to Section 1988 causes of action. In *Hafer*, the Supreme Court clarified the distinction between suits against state officials for acts committed in their official capacity and suits against state officials for acts committed in their personal capacity.

■ The Supreme Court explained, "Although 'state officials literally are persons,' an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" *Id.*, 112 S.Ct. at 362. The suit is against the state, not the named individual, and thus the official is not a "person" for purposes of a Section 1983 cause of action. *Id.* at 361, 362. The Supreme Court pointed out that the immunity available to a defendant in his official capacity is the same as that available to the government entity. *Id.* at 362.

The Supreme Court next discussed suits filed against state officers in their personal capacity. These causes of action impose individual liability on state officers who commit acts under the color of law. *Id.* Therefore, a state officer sued in his personal capacity fits within the statutory term "person" as required by Section 1988. *Id.* The defenses available to the defendant in a personal-capacity suit are personal immunity defenses, which would be available to any defendant, such as reasonable reliance on existing law. *Id.*

This official-capacity and personal-capacity distinction also applies in Texas. *See, e.g., Esparza v. Diaz*, 802 S.W.2d 772, 778 (Tex.App.—Houston [14th Dist.] 1990, no writ) (a suit against an official in his official capacity invokes "sovereign immunity," whereas a suit against official in his

personal capacity invokes "official immunity").

A state agency, as an arm of the state, is shielded by the sovereign immunity available to the state government. *See Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). A branch of the University of Texas system is a state agency, and thus, it is also protected by sovereign immunity. *Bagg v. University of Texas Medical Branch*, 726 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). The Health Science Center in San Antonio in particular is categorized as a part of the University of Texas system. *See* TEX.EDUC. CODE ANN. § 65.02(a)(10) (Vernon 1991). It follows that public employees who work in a state agency and commit acts in their official capacity are shielded by sovereign immunity. *See Esparza*, 802 S.W.2d at 778.

The Supreme Court did not remove any shield of sovereign immunity that existed under the law prior to *Hafer v. Melo*. Sovereign immunity applied to the Health Science Center and was available to all employees acting within their official capacities. Appellant's first point is denied.

In her third and fourth points of error, Whitehead contends that the directed verdict was improper on the issue of breach of employment contract. The trial court held and the record reflects that no employment contract existed and that the Health Science Center breached no employment contract. We are therefore bound by these findings. Accordingly, Whitehead has failed to show reversible error.

Furthermore, her points of error cannot be sustained for other reasons. Whitehead asserts a contract exists for two reasons: that employment in Texas is, as a matter of law, contractual, and that the Health Science Center's manual of discipline, discharge and grievance policies creates an employment contract. However, Whitehead fails to explain in her brief how the alleged contract was breached. After reviewing her brief and considering the assertions made during oral arguments, it appears that Whitehead attempts to argue

that her employment contract was violated because she was dismissed without cause.

Whitehead first relies on *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989), for the proposition that a contract for employment may exist, even in an employment at will setting. In *Sterner*, the supreme court discussed whether an employee could sue a defendant for the tortious interference with a contract of employment terminable at will. No evidence indicated that the plaintiff in *Sterner* had an express contract modifying the employment at will doctrine. The supreme court held that an employment relationship, until terminated, involves a valid contract which cannot be tortiously interfered with by third persons. *Id.* at 689. However, no tortious interference cause of action was asserted by Whitehead below.

We do not disagree with the argument that all employment relationships are implicitly contractual. *See Pioneer Cas. Co. v. Bush*, 457 S.W.2d 165, 169 (Tex.Civ. App.—Tyler 1970, writ ref'd n.r.e.). Before any employment relationship commences, the employer must agree to hire the employee and the employee must agree to the employer's conditions. However, the key issue in any wrongful discharge case is whether there is an employment contract modifying the at will doctrine. When the term of employment is indefinite, and absent a specific contract term to the contrary, the employment is terminable at will and without cause by either party. *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 832–33 (Tex.1991); *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991); *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 723 (Tex.1990).

The record shows that Whitehead introduced no evidence of a contract for a specific term or that a contractual provision prevented her dismissal without cause. On this basis alone, the trial court properly granted the motion for directed verdict.

Whitehead nevertheless insists that the common law at will doctrine was modified in this case by the discharge and grievance policy manual of the Health Sci-

ence Center. It is true that an employee handbook can become part of the employment contract and limit the employer's right to discharge an employee. *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6 (Tex.App.—Corpus Christi 1991, no writ). However, "Texas courts have consistently held that general company manuals or handbooks, if unaccompanied by an express agreement or written representation regarding procedures for discharge of employees, do *not* constitute written employee agreements immune from the at-will rule." *Hicks v. Baylor Univ. Medical Ctr.*, 789 S.W.2d 299, 302 (Tex.App.—Dallas 1990, writ denied). In order for the at will relationship to be modified, the handbook or manual must specifically and expressly limit the employment relationship and curtail the employer's right to terminate the employee. *McAlister v. Medina Elec. Coop., Inc.*, 830 S.W.2d 659, 664 (Tex.App.—San Antonio 1992, writ denied). The manual must "modify the at-will relationship and limit the employer's termination rights 'in a meaningful and special way.'" *Id.*

Whitehead's reliance on *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1199 (5th Cir.1987), in which the court held that a handbook modified the employment relationship, is misplaced. *Aiello* differs in that its manual contained detailed discharge policies and expressly recognized the obligation to discharge only for cause. No such arrangement exists in this case. The Health Science Center's discharge and grievance policy manual in one section enumerates five situations in which an employee may be subjected to disciplinary action and discharge. However, the manual expressly states that the Health Science Center is not limited to the five listed reasons for discharging an employee. *See also McAlister*, 830 S.W.2d at 664. The policy manual was unilaterally provided to Whitehead by the Health Science Center, suggesting that it served as nothing more than a general guideline for the university. *See Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ). There was no evidence of a contract expressly agreed upon and adopted by the parties, nor was there evidence that the language in the policy manual limited the employer's rights in a meaningful and special way. On this basis, the trial court correctly granted the motion for directed verdict. Points three and four are denied.

In her second point of error, Whitehead contends the court erred in granting directed verdict as to her cause of action for deprivation of due process under the Fourteenth Amendment of the federal constitution.

The trial court held in its findings of fact that the Health Science Center and its employees did not fail to comply with the university's discipline procedures, did not fail to exercise pretermination and post termination procedures, and therefore concluded that they did not deprive Whitehead of due process of law. Again, we note Whitehead makes no complaint about the court's findings of fact. Therefore, they are binding upon this court. *Wade*, 602 S.W.2d at 349. Accordingly, Whitehead has failed to show reversible error.

Even if we reviewed the court's findings of fact without a point of error, we would hold Whitehead's complaint must be overruled. The Due Process Clause of the federal constitution provides that one may not be deprived of life, liberty and property without constitutionally adequate procedures. *Bexar County Sheriff's Civil Serv. Comm'n v. Davis*, 802 S.W.2d 659, 661 (Tex.1990). An analysis of a due process claim requires a two-part inquiry: whether the plaintiff was deprived of a protected interest and, if so, what process was due to safeguard that interest. *Id. See also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982). As the evidence clearly indicates, Whitehead did not satisfy the two-part inquiry discussed in *Davis*. First, Whitehead was an employee at will and had no interest in continued employment. Therefore, she enjoyed no protected property interest in her job. *See Renken v. Harris County*, 808 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1991, no writ); *cf. Davis*, 802 S.W.2d at 661. Second, the Health Science Center did not deprive

Whitehead of the necessary procedures to safeguard her position.

Due process requires that the plaintiff receive oral or written notice of the charge against her, an explanation of the employer's evidence, and an opportunity to present her side of the story. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985). The pretermination notice and opportunity to respond, coupled with post termination administrative proceeding, are all the process that is due before one's constitutionally protected interest in employment may be deprived. 470 U.S. at 547, 105 S.Ct. at 1496.

In the present case, Whitehead received notice of a written reprimand on April 20, 1987. She refused to accept it, although she was orally apprised of most of its contents. After the meeting with Banse and Saunders, Whitehead made no attempt to rebut the complaints in the reprimand. A conference was later held on April 30, 1987 wherein Whitehead and her superiors discussed the reprimand and her job duties. These facts alone suggest Whitehead received sufficient process to satisfy the pretermination requirements of *Loudermill. Id.* 470 U.S. at 547, 105 S.Ct. at 1496. After she was fired, Whitehead received notice of an adversarial hearing to challenge her termination. A hearing was scheduled, but postponed at Whitehead's request. She never contacted the university to set up a new time for a hearing. Therefore, Whitehead did not avail herself of the opportunity to respond to her termination, hence waiving any due process rights she may have had. *See Lassiter v. Department of Social Serv. of Durham County,* 452 U.S. 18, 33, 101 S.Ct. 2153, 2162–63, 68 L.Ed.2d 640 (1981). *See also Rathjen v. Litchfield,* 878 F.2d 836, 841 (5th Cir.1989). Whitehead was not deprived of due process under the inquiry described in *Davis.* The second point is denied.

The judgment is affirmed.