

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00145-CV
_____

**JERRY ROBERSON, APPELLANT**

V.

**RONALD SHACKELFORD, APPELLEE**

On Appeal from the 242nd District Court
Hale County, Texas
Trial Court No. B39804-1405; Honorable Kregg Hukill, Presiding

October 15, 2021

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant, Jerry Roberson, appeals the trial court's final judgment in favor of Appellee, Ronald Shackelford, on his property damage claim arising out of a fire that destroyed Shackelford's property. Roberson challenges the trial court's judgment through four issues. Issue one, was the evidence legally and factually sufficient to support the judgment against Roberson in his individual capacity? Issue two, was expert testimony

speculative and conclusory and, therefore, improperly admitted?  Issue three, was the evidence legally and factually sufficient to support the trial court's finding that the fire lit in the "southeast barrel" on March 15, 2013, was incompletely extinguished?  And, finally, issue four, was the evidence legally and factually sufficient to support the trial court's finding that the fire which occurred on March 18, 2013, was caused by an incompletely extinguished fire lit in the "southeast barrel" on March 15, 2013?  We find that while some of the expert testimony was speculative and conclusory and, therefore, inadmissible, the evidence was nevertheless sufficient to support the trial court's final judgment against Roberson in his individual capacity.  Accordingly, we affirm the judgment of the trial court.

## BACKGROUND

Roberson and Shackelford own neighboring properties in an industrial area located in Plainview, Hale County, Texas.  Roberson owns real property located at 1014 Ash and leases that property to JQ Long Roofing.[1]  Shackelford leases a nearby property from BNSF Railroad and owns improvements, including the building at issue in this suit, on that property.  The two properties are separated by an abandoned railroad right-of-way.[2]

On Monday, March 18, 2013, an early-morning fire completely destroyed Shackelford's building.  The building was a "wood frame Quonset barn overlaid with tin siding."  It was set on a concrete footing and four-by-four posts were mounted into the concrete footing.  Through subsequent investigation, it was determined that the Friday before the fire (March 15, 2013), three workers, Bernard Ortiz, Sammy Ruiz, and Pedro

---

[1] JQ Long Roofing is a corporation solely owned by Roberson.

[2] JQ Long Roofing does not own the railroad right-of-way.  It is used to provide ingress and egress to Shackelford's and Roberson's properties.

2

Pena, burned debris in two fifty-five-gallon barrels[3] located in the railroad right-of-way between the two properties. Those three workers were ordinarily employed by JQ Long Roofing, as contract laborers, but also performed occasional non-job-related tasks for Roberson, individually.[4]

Rusty Powers, the Plainview Fire Department Chief, investigated the fire. He concluded that, at the time of the fire, the wind had been from the southwest at approximately seven knots or "slightly over eight miles per hour." When he arrived at the scene of the fire, he discovered two hot barrels in the right-of-way between Roberson's and Shackelford's properties. The barrel to the southeast of Shackelford's building was about twelve feet from the building and was about three-quarters full of ash. Powers also observed a nearby telephone pole with charring primarily on the east side of the pole. Powers opined this indicated the fire traveled from east of the pole, from the direction of the southeast burn barrel. Powers spoke with Roberson on March 18, and he confirmed he had people "cleaning up, and they were burning in those barrels."

Phillip Mize, the fire marshal and chief fire investigator at the Plainview Police Department, conducted his investigation of the scene several days later. At the scene, Mize saw a barrel approximately twelve to fifteen feet off the southeast corner of the building. He testified it appeared to be "three-quarters full or a little better." He did note that there was also a lot of tin on the scene, likely distributed when the firefighters fought

---

[3] Roberson testified he did not know whether the barrels belonged to JQ Long Roofing.

[4] Roberson testified that he tried to make sure the workers were given work, even during slow times for the roofing company. He told the workers that if they were "interested, you know, you can clean up this property back here. I'm having a lot of break-in's [sic] into my property, and so if you guys want to do it, they can do that." Roberson also testified that the workers did work for him around his farm and residence.

the blaze. Mize observed physical evidence of the fire's progression, including burn patterns on the ground outside Shackelford's building. Mize only saw patterns on the southeast corner of the building. He testified "those did not come from the pit, those came from the direction of the barrel." Following his observations and after considering alternative hypotheses, Mize concluded the fire was human-caused and that the burn barrel near the southeast corner of Shackelford's building was most likely the point of origin and the ignition source.

Shackelford sued Roberson for negligence in his individual capacity, seeking damages for the destruction of his building. He pleaded two theories under which he alleged Roberson was personally liable. First, Roberson was sued for his own negligence in that he breached the duty of care owed to Shackelford by failing to adequately supervise and exercise control over the workers and by failing to exercise reasonable care to ensure his property was safe before leaving the barrels unattended (direct liability). Second, Shackelford alleged Roberson was liable under the doctrine of respondeat superior for the negligence of his workers (vicarious liability). Roberson did not allege he was not liable in the capacity sued. Rather, his defensive theory was that he was not responsible for the fire, directly or indirectly, because a third party started the fire and caused the damage to Shackelford's building. The matter was tried to the bench, after which the trial court entered findings of fact and conclusions of law.[5] The trial court then entered a judgment in favor of Shackelford, awarding to him the sum of $70,000.[6]

---

[5] In one of those findings, the trial court found that Roberson's employees did not properly extinguish the fire they had started in the southeast burn barrel.

[6] Shackelford testified he believed he would incur expenses of at least $70,000 to replace the burned structure.

**STANDARD OF REVIEW**

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Nguyen v. Yovan*, 317 S.W.3d 261, 269-70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). When challenged, a trial court's findings of fact are not conclusive if there is a complete reporter's record on appeal. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We review a trial court's findings of fact under the same legal sufficiency of the evidence standard used when determining whether sufficient evidence exists to support an answer to a jury question. *Catalina*, 881 S.W.2d at 297; *Nguyen*, 317 S.W.3d at 269-70.

An appellant is not entitled to challenge a trial court's conclusions of law for factual sufficiency, but an appellate court may review the legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V.*, 83 S.W.3d at 794. In an appeal from a bench trial, we review the conclusions of law *de novo* and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *Id.* "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.*

When considering whether legally sufficient evidence supports a challenged finding, we must consider the evidence that favors the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Additionally, we view the evidence in the light most favorable to the trial court's findings and indulge every reasonable inference

5

to support them. *Id.* at 822. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. Because it acts as the fact finder in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Therefore, we will not substitute our judgment for that of the fact finder so long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions." *City of Keller*, 168 S.W.3d at 822.

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the appellant must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing such a challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.*

In a factual sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When an appellant

6

challenges an adverse finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When an appellant challenges an adverse finding on an issue on which it had the burden of proof at trial, an appellant must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242; *Reliant Energy Servs., Inc.*, 336 S.W.3d at 782.

### ANALYSIS

### ISSUE ONE—SUFFICIENCY OF THE EVIDENCE SUPPORTING A FINDING OF INDIVIDUAL LIABILITY

Roberson advances several arguments through his first issue. He first argues Shackelford was required to prove he was individually liable and that the evidence set forth was insufficient to do so. He also argues that the evidence was insufficient to prove the three workers were working for him in his individual capacity when they cleaned the right-of-way area on March 15, 2013. Third, he argues the trial court erred when it ruled that the issue of piercing the corporate veil had been tried by consent. And finally, he contends the evidence was insufficient to prove he and JQ Long Roofing were alter egos.

Roberson argues that when he filed his general denial, the merits of Shackelford's case were placed in issue. He contends it is irrelevant that he did not file a timely motion to designate a responsible third party or that JQ Long Roofing was not added as a responsible third party. Roberson asserts that Shackelford must prove he acted

7

individually and not as an agent for JQ Long Roofing. He further argues the evidence presented was insufficient to prove individual liability. He admits he hired the workers to clean the right-of-way but says he did so in his capacity as manager for JQ Long Roofing. He further says his oversight of the cleanup was performed in the same capacity.

Shackelford responds that Roberson has waived the issue that he is not liable in his individual capacity. Roberson failed to make necessary disclosures under Texas Rule of Civil Procedure 194.2 because he failed to disclose that JQ Long Roofing was a potential party or potential responsible third party until after the statute of limitations period had passed. Further, Roberson did not challenge the trial court's conclusions of law regarding the consequences of that failure. Additionally, Roberson only filed a general denial to Shackelford's suit against him. He failed to allege in a verified pleading that he was not liable in his individual capacity or that there was a defect of parties as required under Texas Rule of Civil Procedure 93. *See* TEX. R. CIV. P. 93.

In Roberson's reply brief, he argues the trial court's conclusions of law "dealt with direct liability, not direct negligence. The findings of fact and conclusions of law do not attribute any direct negligence to Roberson." He also asserts that while Shackelford pleaded direct negligence, he argued at trial that Roberson was liable under vicarious liability and alter ego theories. *See Price v. Sanchez*, No. 14-15-00508-CV, 2016 Tex. App. LEXIS 8555, at *7 n.5 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, no pet.) (mem. op.) (appellants argued that the plaintiff offered no evidence or testimony to pierce the corporate veil sufficient to hold appellants individually liable for the actions of their respective corporations, but the trial court held that the plaintiff's failure to plead any veil-piercing theories did not preclude a determination that appellants were individually liable

8

for their *own* actions) (emphasis in original). *See also Light v. Wilson*, 663 S.W.2d 813, 814 (Tex. 1983); *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 930 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding that individual liability may be found without having to find the corporation is alter ego of individual); *Gray v. West*, 608 S.W.2d 771, 778 (Tex. App.—Amarillo 1980, writ ref'd n.r.e.) (concluding that plaintiff sued defendant individually on the theory that defendant participated individually in the transaction; plaintiff was not attempting to establish defendant's liability as an alter ego).

Ordinarily, a defendant must file a verified denial should he wish to assert that he "is not liable in the capacity in which he is sued." *Price*, 2016 Tex. App. LEXIS 8555, at *4 (citing TEX. R. CIV. P. 93(2)). However, the Supreme Court of Texas has found that this requirement applies to a defendant's "standing to assert or defend the action before the Court. It does not relate to the merits of the cause of action or the merits of the defenses thereto." *Price*, 2016 Tex. App. LEXIS 8555, at *4 (citing *Light*, 663 S.W.2d at 814 (rejecting plaintiff's contention that defendant waived defense that he was not liable in the individual capacity in which he was sued, despite defendant's failure to file general denial)). The defendant can still challenge whether the plaintiff met his burden to "recover in any capacity alleged." *Price*, 2016 Tex. App. LEXIS 8555, at *4 (citing *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 421-422 (Tex. App.—Dallas 2012, no pet.) (analyzing *Light* and concluding that defendant may challenge plaintiff's right to recover, despite lack of verified pleading)). If a defendant files a general denial, then the merits of the plaintiff's case are placed in issue. *Price*, 2016 Tex. App. LEXIS 8555, at *5 (citing *Light*, 663 S.W.2d at 814). Accordingly, despite the fact that Roberson did not file a verified denial, he did not waive his right to challenge the legal sufficiency of the

9

evidence against him.  *Price*, 2016 Tex. App. LEXIS 8555, at *5 (citing TEX. R. APP. P. 33.1(d) (providing that "[i]n a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief")).  *See Ross Stores, Inc. v. Mille*r, No. 14-18-01032-CV, 2020 Tex. App. LEXIS 8589, at *7-8 (Tex. App.—Houston [14th Dist.] Nov. 3, 2020, no pet.) (mem. op.) (citing *Price*, 2016 Tex. App. LEXIS 8555 at *5).  We will thus consider the merits of Roberson's argument.

The evidence before the trial court supporting a finding of Roberson's direct liability was the undisputed evidence that he owned the property and was the sole shareholder of the corporation leasing the premises.  The right-of-way was not part of Roberson's property, but he asked his workers to clean up the area.  Ortiz, Ruiz, and Pena, while employed by JQ Long Roofing, frequently performed labor for Roberson at his home.  Powers testified Roberson referred to the three workers as "his employees."  Roberson testified, "I don't have any employees and never have had."

Ruiz testified that before the fire, he "was cleaning up a whole bunch of leaves.  We had a bunch of leaves and I was burning leaves, that's what I was doing."  He answered "No, sir" when asked whether Roberson told him to burn leaves.  Ruiz told the court that "[a]fter about 5:00, they came out, [Roberson] and [Ortiz] came out and told me to put the fire out."  He "poured a bucket of water."  He later specified saying, it was a "[f]ive gallon bucket."  Ruiz did agree that they used Roberson's trailer for the clean-up.  On cross-examination, he clarified that the trailer belonged to JQ Long Roofing, not Roberson, and that all three workers primarily worked for the roofing company, not Roberson.  He testified on direct examination Roberson told them what to clean up, when

10

to come to work, and when to leave work. He also agreed Roberson was his only source of employment at the time of the fire. He also stated Roberson told them on Friday, March 15, not to burn in the barrels.

Ortiz testified he believed Roberson bought JQ Long Roofing at some point and was the sole owner. Ortiz said he worked for Roberson as a subcontractor for JQ Long Roofing and that Ruiz and Pena worked with him. Ortiz testified that when he was doing roofing work, Roberson paid him "by the square" but when the workers were doing cleanup, Roberson would pay him "by the hour." Ortiz stated that Ruiz and Pena were paid through him, not Roberson. Ortiz testified he had helped Roberson at his farm with his cattle for "[a]bout 20 years." He said he did not believe that task was related to JQ Long Roofing. Ortiz also testified they sometimes worked at Roberson's house "doing cleanup." Ortiz mowed Roberson's yard and the three of them would "mow the depot area and clean up around there." They also cared for Roberson's animals. He said that while he had some tools of his own, JQ Long Roofing provided the tools for the work he did for the company. He told the court Roberson provided the tools for cleanup of the right-of-way on March 15.

Ortiz further testified Roberson told them to clean up the right-of-way near the business but did not tell the workers to burn the leaves. The workers decided to do so on their own. He told the court that prior to the fire, he and the other two workers "were raking up leaves and burning them in barrels." He said they were "just doing some cleanup, and he did not tell us to burn them, but we got the bright idea that we could just put them into barrels and get rid of them." He did confirm, however, that Roberson was aware that the workers were burning debris in the barrels. Roberson testified he did not

11

know the men were burning debris *until* he arrived on Friday, March 15. Shackelford argues this demonstrates Roberson failed to adequately supervise the workers during their cleanup work that week.

However, Ortiz also testified Roberson did not tell them to stop burning leaves because he "was busy in the office somewhere." Ortiz said the workers had been burning in those two barrels for about "two days, three days" that week. He said that on Friday, March 15, they extinguished the fires in the two fifty-five-gallon barrels by "dous[ing] them with five gallon buckets of water . . . ." They then checked to make sure the fires were out by poking inside the barrels with a stick.

Pena testified he did some jobs for JQ Long Roofing but the three workers were "just kind of like cleaning up" when the 2013 fire occurred. He said "[i]t was different from the roofing part." He said the workers decided to burn in one or two big barrels while they waited on their paychecks. He agreed that when he was doing this job, he was paid by JQ Long Roofing. He later said he was paid by "[t]he company or Jerry." He also said the barrels in question were not full that day. He did not recall whether Roberson came to the property on March 15. He remembered they put the fires out by pouring water into the barrels.

Roberson testified at trial that he owns the real estate on which JQ Long Roofing sits. The roofing company operates on a lease. Roberson testified he hired the three workers to conduct cleanup of the right-of-way near his property as "general manager of J.Q. Long Roofing. J.Q. Long Roofing hired men—contracted with a group of men to do cleanup for a contracted amount." Roberson did not personally participate in any part of

12

the job.  He requested that the workers clean up the area because of the danger of fire and vandalism.  He testified he contracted with them to perform these tasks for $1,000, which he later increased to $1,100 due to additional expenses.  He provided dump trucks and a flatbed trailer for them to clear out the trees, brush, and undergrowth and to pick up wood from a fence.  Roberson admitted he sometimes hired the workers to do projects outside the work of the roofing company and did so on "a day labor basis."  The record also shows Roberson personally saw the barrels on the afternoon of Friday, March 15, 2013, and saw that the workers were "putting the barrels out, pouring water in the barrels as I approached."[7]  He testified he "visually inspected to make sure that there wasn't anything in there."  The record also shows Roberson was individually issued a ticket for burning inside the city limits, an action that violated a city ordinance.  However, there is no indication that the ticket was ever adjudicated.

Mize testified he was never "told anything about J.Q. Long Roofing, it was always Mr. Roberson."  According to both Mize and Powers, five gallons of water was insufficient to extinguish a fire burning in the southeast fifty-five-gallon barrel and it was possible that such a fire would continue to smolder for days, even if it appeared the fire was out.  In fact, on March 22, 2013, four days after the fire, Powers checked the barrel and found the southeast barrel was still smoldering and the temperature of the barrel measured at 368 degrees. This followed two attempts to extinguish the fires with water from fire engines.

The trial court was the sole judge of the facts and of the credibility of the witnesses, and we will assume that it made the necessary fact findings to support its judgment.

---

[7] At trial, Roberson testified that burning in the barrels was "totally inappropriate."

Based on this record, we cannot say that the evidence was legally or factually insufficient to support the trial court's finding of individual responsibility on the part of Roberson for the damages sustained by Shackelford. Because we find the evidence was sufficient to support the finding of liability, we need not discuss the alternative arguments that the trial court's determination of liability was sustainable based on either a theory of trial by consent or alter ego. Issue one is overruled.

### ISSUE TWO—EXPERT TESTIMONY

Via his second issue, Roberson contends the testimony of Powers and Mize was speculative and conclusory and thus constituted no evidence. Shackelford argues that because Roberson failed to identify and challenge any decision of the trial court, he has failed to assign error with respect to the admissibility of this expert testimony. Furthermore, Roberson failed to identify any portion of the record in which he raised his objections to the expert testimony before the trial court. As such, he has waived his complaint under issue two. In his reply brief, Roberson counters by responding that he is entitled to attack the experts' testimony as being conclusory or speculative by preserving a legal sufficiency challenge to the evidence and did not need to object at trial.

Opinion testimony that is conclusory or speculative is objectionable as lacking relevance because it does not tend to make the existence of a material fact "more probable or less probable." *Integrated of Amarillo, Inc. v. Kirkland*, 424 S.W.3d 131, 135 (Tex. App.—Amarillo 2014, no pet.) (citing *Coastal Transp. Co. v. Crown Cent. Petro. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (quoting TEX. R. EVID. 401)). But even if admitted without objection, an expert's bare unsupported conclusion amounts to no evidence and will not support a judgment. *Id*. (citations omitted). Thus, a party may complain that

14

conclusory opinions are legally insufficient evidence to support a judgment even if no objection was raised to the admission of that opinion testimony. *Kirkland*, 424 S.W.3d at 135 (citing *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (*citing Coastal Transp. Co.*, 136 S.W.3d at 232)).

When, however, the contention raised on appeal makes it necessary for the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so the trial court has the opportunity to conduct this analysis. *Kirkland*, 424 S.W.3d at 135 (citing *Coastal Transp. Co.*, 136 S.W.3d at 233). Otherwise, the opinion's proponent is denied "a fair opportunity to cure any deficit and thus prevent trial by ambush," and the trial court's role as gatekeeper is usurped. *Kirkland*, 424 S.W.3d at 135. Challenges to the expert's scientific methodology, in which "the court necessarily looks beyond what the expert said to evaluate the reliability of the expert's opinion," *Coastal Transp. Co.*, 136 S.W.3d at 233, are to be distinguished from a no-evidence challenge asserting that on the face of the record, the evidence lacked probative value. *Kirkland*, 424 S.W.3d at 135. Consequently, "when the challenge is restricted to the face of the record -- for example, when expert testimony is speculative or conclusory on its face -- then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility." *Id.* (citation omitted). In other words, "even when some basis is offered for an [expert] opinion, if that basis does not, on its face, support the opinion, the opinion is still conclusory." *Id.* (citing *Pollock*, 284 S.W.3d at 817; *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009) (expert opinion might be conclusory because based on tests or data that do not support the conclusions reached; such an opinion is not probative evidence)).

Here, Roberson's issue challenging the expert testimony does not require us to look beyond what was stated at trial and we have no need to look to the data or methodology underlying the expert opinion. Roberson challenges the expert testimony as speculative and conclusory because (1) both Mize and Powers *assumed* disputed facts to be true, to-wit: that the southeast barrel was three-fourths full when the workers burned debris in it and "guessed" that such a barrel would take hundreds of gallons of water to fully extinguish, (2) in determining the cause of the fire, Mize relied on information that the workers were burning debris in the barrels *the day before the fire*, not three days prior, and (3) neither Mize nor Powers ruled out other plausible causes of the fire. None of these contentions require us to evaluate the underlying methodology, technique, or foundational data. Therefore, we find Roberson's failure to raise the issue at trial does not preclude our review of his second issue on appeal.

We review a trial court's ruling on expert testimony for an abuse of discretion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006). Under this standard, the trial court has broad discretion in deciding whether to admit or exclude expert testimony. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998). We will sustain an issue only if the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Harris Cnty. Appraisal Dist. v. Hartman Reit Operating P'ship, L.P.*, 186 S.W.3d 155, 157 (Tex. App.—Houston [1st Dist.] 2006, no pet). An abuse of discretion is not demonstrated by a mere error in judgment. *Id*. Further, an appellate court will not reverse the trial court's conclusion simply because it would have ruled differently. *Lincoln v. Clark Freight Lines, Inc.*, 285 S.W.3d 79, 84 (Tex. App.—

Houston [1st Dist.] 2009, no pet.). In an abuse of discretion review, "[c]lose calls must go to the trial court." *Larson v. Downing*, 197 S.W.3d 303, 304 (Tex. 2006) (per curiam).

Expert opinion testimony on an ultimate issue is admissible and an expert may testify in terms of opinion or inference and give the reasons for that opinion without prior disclosure of the underlying facts or data. TEX. R. EVID. 704, 705. However, for an expert's opinion testimony on an ultimate issue to be competent, it must not be speculative or conclusory. *See Coastal Transp. Co.*, 136 S.W.3d at 233 ("[o]pinion testimony that is conclusory or speculative . . . is 'incompetent evidence,' and . . . cannot support a judgment"). Expert opinion that has no factual substantiation in the record is speculative or conclusory. *Beaumont v. Basham*, 205 S.W.3d 608, 621 (Tex. App.—Waco 2006, pet. denied); *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 463 (Tex. App.—Dallas 2005, no pet.). "In other words, the expert must explain how he reached his conclusion." *Croft*, 175 S.W.3d at 464 (citation omitted). This is because "it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere ipse dixit of a credentialed witness." *Coastal Transp., Co.*, 136 S.W.3d at 232 (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)).

Mize's fire report states as follows:

> The men working in the area may have thought the fire in the barrel was out. But with the amount of ash in the barrel closest to the point of origin, it would have taken several days for the embers to completely burn out and cool. I believe the wind was strong enough and could have blown embers up against the wood and leaves along the outside of the structure, causing the structure to burn.

Mize testified that he believed the fire had a human source because he had heard that the workers were cleaning up the right-of-way and burning debris in barrels. When asked about the care required when burning a barrel like the southeast barrel, he stated, "To me, if this would have been done, in my experience, that either someone should have constantly monitored that or more effort should have been made to extinguish a fire if you were going to burn something like this."

Both Powers and Mize testified that a five-gallon bucket of water like that used by the workers would not extinguish a fire in a barrel that was three-quarters full of ash. Rather, Powers guessed it would "probably take hundreds of gallons of water to fully extinguish. It's practically impossible without lots and lots of water." Mize's report stated it could take several days for the embers to fully cool in a barrel three-fourths full of ash. Mize testified that in his opinion, the fire started in the southeast barrel. He came to this conclusion based on the fire patterns and wind direction. He believed the source of the ignition was by a human cause because he had been told three workers were cleaning the right-of-way and using the barrels to burn debris *the day before the fire*. He believed the hot embers could have escaped from the barrel and mixed with dried plant material on the ground, causing the fire to start and then spread to the neighboring barn.

Roberson contends Mize's testimony was based on the "unfounded assumption" that the southeast barrel was three-fourth's full when the three workers extinguished the fire. Further, Roberson argues, Mize's opinion was based on the assumption that the southeast barrel was not fully extinguished. Before Mize wrote his opinion, he was told the three workers were burning materials in the barrels *one* day before the fire. However,

no one informed Mize that the workers were burning debris in the barrels *three* days prior to the fire.

Roberson asserts that the evidence shows the three workers extinguished the fires in barrels that were less than three-fourths full on March 15, 2013. The barrels were between eight inches and one-half full and the workers checked the barrels for smoke and sparks, finding none. One of the workers, Ruiz, touched the barrel and it was cool. The evidence also showed, Roberson argues, that the barrels the workers used on March 15 did not look like and were less full than the picture of the southeast barrel taken on March 18. Mize discounted this evidence in reaching his opinion.

Roberson points us to *Club Vista Dev. II, Inc. v. Oncor Elec. Delivery Co., LLC*, No. 05-12-01727-CV, 2014 Tex. App. LEXIS 9081 (Tex. App.—Dallas, Aug. 15, 2014, pet. denied) (mem. op.). There, the court concluded "too great an analytical gap" existed between the foundational data and the methodology employed by the experts and their opinions. *Id.* at *25. The experts in that case had no experience with wildfires like the one at issue there. One of the experts opined that the fire could have "easily been ignited by a carelessly disposed cigarette." *Id.* at *16, 24. He reached that conclusion after receiving reports that a worker smoked on breaks during work hours. *Id.* at *24. The expert also based his opinion on a "laboratory test" in which he dropped a lit cigarette on leaves on a "metal plate" with wind generated by a small battery-powered fan. *Id.* The court found there was no evidence that the worker had a cigarette in his possession on the day of the fire or that he disposed of a cigarette at the scene of the fire. *Id.* at *25. As such, the court determined, the experts' opinions were based on assumed facts that varied from the actual undisputed facts. *Id.* Roberson argues that like the expert

testimony presented in *Club Vista*, Mize's testimony was conclusory because it was based on unfounded assumptions that contradicted the actual facts of this case, namely that the barrels used by the three workers were not three-quarters full of ash and the workers were not burning leaves on the day before the fire in question. As such, we agree that Mize's opinion that the fire was caused by the workers was conclusory because it was based on unfounded assumptions. We reach the same conclusion with regard to the testimony about how much water it would take to extinguish the fires in barrels that contained debris similar to that in the southwest barrel or how long it would take each barrel to cool such that it would not reignite days later.

Moreover, Roberson argues Mize's and Power's testimony is conclusory and speculative because they failed to rule out other plausible causes, to-wit: a third-party started a fire in the southeast barrel after Roberson's workers extinguished the fire that they had started on March 15. Specifically, he contends, the experts failed to rule out the possibility that the fire was started by a vandal or other third person despite Roberson's previous problems with people lighting fires in the railroad right-of-way and the edge of the Roberson property. In fact, Mize indicated that he was aware of two previous fires on the Roberson property, both in July 2012, which were set by third parties.[8] Despite this information, Mize never spoke with Roberson and opined that the scene appeared to be in the same state it had been the day of the March 18 fire except for the fire suppression

---

[8] Mize testified he found reports of two fires, one on July 17, 2012, and one on July 18, 2012. In the report of the first fire, the author wrote "that kids had gotten in there and were setting stuff on fire, and our guys went and put it out." In the report of the second, the author "indicated that they had caught the children that were actually setting the fire, and it was a small fire, and PD was notified, and after that, PD took care of it." Mize said he believed two juvenile arrests stemmed from those fires.

efforts.  Mize testified he did not contact Roberson "[b]ecause [Roberson] had already admitted twice to the offense that he was receiving a citation for."

In *Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex. 2010), the Supreme Court said, "[a]n expert's failure to explain or adequately disprove alternative theories of causation makes his or her own theory speculative and conclusory."  Roberson argues the experts' "no drag marks" reason for failing to investigate an unknown vandal was not sufficient for many reasons, the most significant being that there was no explanation for why a third person could not have started a fire in the southeast barrel in the same location it was in on the previous Friday, particularly given how heavy the barrel was.  The property is accessible by the public and thus, anyone could have started a fire in the barrel. Powers testified he did not thoroughly investigate Roberson's allegation that a third party could have started the fire because there was "no indications of drag marks."  He said, "I did go back and look at the barrels to see if there was [sic] any drag marks or anything that would indicate that the barrels had been moved at any time; I did not notice anything at that time."  Powers testified that the barrels were "[e]xtremely heavy."  Mize testified "it appeared that the scene was in the same state that it had been the day of the fire."  This testimony indicates it is unlikely the barrels were moved from their positions on March 15 when they were used by Roberson's employees to burn trash.  But, that testimony alone does not explain why it was Roberson's workers who started the fire that damaged Shackelford's building and not an unnamed third party who may have started a subsequent fire.  A third party could have easily started the fire in the barrels as the barrels were situated in the open right-of-way and did not need to be moved.  Indeed, while it is unlikely someone could have moved the barrels given their weight, it is certainly plausible

21

that the fire in question was caused by third persons. The expert testimony also did not include the fact that shortly after the fire, Roberson reported someone had damaged his fence. That damage, coupled with previous instances of unknown persons present on and vandalizing or starting fires on the property, constituted facts that controverted the theory that the workers burning leaves in the barrels three days before the fire was the cause of the fire. *See Merrell*, 313 S.W.3d at 840 (expert's specific causation theory amounted to "little more than speculation"). As such, neither Mize nor Powers explained or adequately disproved the alternate theory that an unknown third party caused the fire and thus, their theory as to the cause of the fire was speculative and conclusory. *Oncor Elec. Delivery Co., LLC v. Southern Food Grp., LLC*, 444 S.W.3d 699, 709 (Tex. App.—Dallas 2014, no pet.); *Sprabary v. Goodman Networks, Inc.*, No. 02-10-00200-CV, 2011 Tex. App. LEXIS 1824, at *4 (Tex. App.—Fort Worth March 10, 2011, no pet.) (mem. op.).

While we agree with Roberson and sustain his second issue to the extent that the expert witnesses opined that the March 18 fire was caused by Roberson's workers, this conclusion does not, however, mean that we would necessarily sustain Roberson's objection to the expert opinions that the March 18 fire was caused by an improperly extinguished fire in the southeast barrel—Roberson's third issue.

### ISSUES THREE—SUFFICIENCY OF THE EVIDENCE OF IMPROPERLY EXTINGUISHED FIRE

The conclusion that the March 18 fire originated from the southeast burn barrel is an entirely different conclusion from who was responsible for the fire in the southeast burn barrel. Using standard fire analysis techniques, Mize theorized that the March 18 fire originated (or had its ignition source) in the southeast burn barrel. Nothing about the quantity of combustible materials in the barrel, or when Roberson's employees were

burning leaves in that barrel, had anything to do with his conclusion that the southeast burn barrel was the ignition source of the March 18 fire. Therefore, this conclusion was not based on improperly assumed facts. Furthermore, while an opinion concerning the quantity of water necessary to "adequately extinguish" a burn barrel fire might depend on the amount of combustible material in the barrel at the time of the attempted extinguishment, that opinion is not inconsistent with the ultimate conclusion that a fire in the barrel was not fully extinguished. Because an opinion that a fire in the southeast burn barrel was not fully extinguished (regardless of the quantity of combustible materials) was proper and supported by the evidence, issue three is overruled.

**ISSUE FOUR—SUFFICIENCY OF THE EVIDENCE TO SUPPORT PROXIMATE CAUSE**

Through his fourth issue, Roberson challenges the trial court's conclusion that he was liable based on the alleged actions of his three workers. Roberson challenges the trial court's finding that "[t]he March 18, 2013 fire that destroyed Plaintiffs [sic] property was caused by the incompletely extinguished fire in the barrel near the southeast portion of the burned structure."

Roberson argues that the three workers did not proximately cause the fire and, therefore, he cannot be held liable to Shackelford. He contends there is no evidence that the contents of the barrels were sufficiently hot to start a fire on Saturday, Sunday, or Monday before the fire. Further, when the three workers extinguished the fire in the barrel on March 15, the barrel was not three-quarters full. However, because it was three-quarters full on March 18, when Powers investigated the scene, this amounts to some evidence that third persons must have added fuel to the barrel. The workers all testified the barrels they used looked more like the southwest barrel than the southeast barrel,

23

meaning the barrels had less combustible materials in them. Roberson argues the additional debris in the southeast burn barrel on March 18 indicates someone was present on the scene between the time the three workers extinguished the fire on March 15 and when the fire began on March 18. He testified he believed an unknown person started the fire or relit the barrels after the material in the barrels had been extinguished by the three workers. At trial, he said he "absolutely" blamed these unknown persons for the fire and felt he did not owe anything to Shackelford.

Shackelford challenges Roberson's theory that an unknown third party started the fire. He notes that the trial court rejected that theory because there was no evidence presented in support thereof. Roberson points to the evidence in the record that the southeast burn barrel was three-fourths full at the time of the fire but that the workers did not recall the barrels being that full. Roberson concludes that a third party must have tampered with the barrels, particularly given the issues he had in the past with juveniles starting fires on the property.[9] Shackelford argues that such a conclusion was certainly not a forgone conclusion, and the trial court was free to accept or reject it.

Roberson argues that here, proximate cause can only be found by "stacking inferences that have no basis in the record." *See Chubb Lloyds Ins. Co. v. H.C.B. Mech., Inc.*, 190 S.W.3d 89 (Tex. App.—Houston [1st Dist.] 2005, no pet.). He sets forth those inferences as:

> **Inference No. 1:** One would have to infer that a five gallon bucket would not sufficiently cool a barrel that was between eight inches and one-half full of ash. One would have to make this inference despite the fact that there

---

[9] Roberson agreed he had reported that an unknown person destroyed a section of his fence. He also agreed that he made the statement that "kids could have burned the building or relit the barrels."

is no expert testimony concerning how much water it would take to cool a barrel that was less than three-fourths full of ash. One would have to make this inference despite the fact that all Three Workers testified that the fire was out and that there was no smoke or sparks. One would have to make this inference despite the fact that Mr. Ruiz put his hands on one of the barrels on Friday and it was cool to touch. One would also have to make this inference despite the fact that Mr. Ruiz checked one of the barrels on Saturday and there was no fire or smoke or anything around the barrel.

**Inference No. 2:** One would have to infer that that the ash from the Southeast barrel was hot enough to start a fire on Monday morning. One would have to make this inference despite the fact that there is no expert testimony concerning how long it would take for the ashes to fully cool when a barrel is less than three-fourths full of ash. Even if the ashes were not fully cool one would also have to infer that the ashes were hot enough to start a fire.

**Inference No. 3:** One would have to infer that the fire in fact did begin in the Southeast burn barrel due to the Three Workers not properly extinguishing the fires on Friday, March 15, 2013. One would have to make this assumption despite the fact the southeast burn barrel was more full on Monday morning than on the Friday beforehand. One would have to make this inference despite the fact that the barrels were in a right-of-way that was not enclosed.

Roberson argues that because the evidence supporting proximate cause was so weak and because proximate cause may not be established through inference stacking, the evidence was insufficient to prove Roberson's liability through the negligence of the workers. By way of contrast, Shackelford argues the record contains evidence supporting the trial court's conclusions without resorting to inference stacking. He points to Powers's observation of two hot barrels in the right-of-way between the parties' properties. The barrels each had holes near the bottom and contained ash. They were located just a few yards from the burned building. Powers also saw the nearby telephone pole was charred on the southeast side, indicating the direction the fire had spread. Powers and Mize noted that the most significant damage to Shackelford's building was in the southeast corner of the building. Mize testified that once he removed the debris, he saw patterns where the

fire had progressed. He saw a V-shaped pattern and noted that the southeast burn barrel was at the point of the V. He testified this pattern was consistent with the wind direction at the time of the fire. The burn pattern on the ground went from the southeast burn barrel to the exposed wooden footing of the destroyed building. Mize testified that in his opinion, the fire was human-caused, and the source of ignition was the southeast burn barrel. The evidence showed the three workers had been burning debris in the right-of-way the Friday before the Monday morning fire. The evidence also showed that the workers poured five gallons of water on the fires in the fifty-five-gallon barrels.[10] While the workers visually checked the barrels and felt for heat, both experts testified this would have been insufficient to determine whether any embers remained. The experts also found there was no evidence of anyone else burning anything on or near the property in the intervening days before the fire. However, as discussed in our analysis of Roberson's first issue, neither expert truly investigated that possibility.

The two elements of proximate cause are cause in fact (or substantial factor) and foreseeability. *IHS Cedars Treatment Ctr. of Desoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798-99 (Tex. 2003). Cause in fact means that the act or omission in question was a substantial factor in bringing about the complained-of injury and without it, the harm would not have occurred. *Id.* Foreseeability means that the actor, as a person of ordinary prudence, should have anticipated the dangers that his acts or omissions might impose on another. *Id.* Foreseeability does not require that the actor anticipate the precise manner in which an injury might be sustained so long as he is responsible for setting

---

[10] The trial court determined in its Findings of Fact and Conclusions of Law that "[o]ne bucket of water is insufficient to extinguish a fire in a barrel."

about the events that caused the injury. *Id.* These elements cannot be satisfied by mere conjecture, guess, or speculation. *Id.* at 799. Cause in fact is not established where the defendant's acts or omissions do nothing more than furnish a condition which makes the complained-of injury possible. *Id.* at 799-800 (citing *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995)). The complained-of acts or omissions must be a "substantial factor" in bringing about the injuries and without which the harm would not have occurred. *Id.*

Here, the complained-of act or omission is Roberson's failure to ensure that the fire started in the southeast burn barrel was fully extinguished. Regardless of whether there might have been an intervening third party, there was evidence that Roberson's employees were responsible for a fire in the southeast burn barrel on March 15. The evidence was that they *attempted* to extinguish the fire with a five-gallon bucket of water. Competent expert testimony was given that hot embers, sufficient to fan a subsequent flame, can still exist after pouring a five-gallon bucket of water into a fifty-five-gallon drum of burning debris. That a fire could be started three days later, after being fanned by the wind, is not such an analytical gap as to amount to mere conjecture or surmise. It is a reasonably prudent conclusion based on life's experiences and it could easily be a substantial factor causing the March 18 fire. As such, we will not disturb the trial court's analysis or implied fact finding.

As to Roberson's third-party argument, in determining whether a defendant is liable for a plaintiff's injuries, Texas courts distinguish new and independent acts or omissions (which destroy the causal connection between the original negligent act or omission and the complained-of injury and becomes the new proximate cause) from "concurrent acts,"

which co-operate with the original act or omission in proximately causing the injury. *Mitchell v. Brandon Mill Assocs., Ltd.*, No. 05-96-00688-CV, 1998 Tex. App. LEXIS 5519, at *7 (Tex. App.—Dallas Aug. 31, 1998, pet. denied) (mem. op.). Therefore, the presence of a third-party tort feasor would relieve Roberson of liability only if the acts or omissions of the third party were clearly sufficient to produce the result *and* the acts or omissions of Roberson were clearly insufficient. Otherwise, they would be considered concurrent tort feasors. Questions concerning third-party liability for concurrent acts are inherently fact questions to be determined by the trier of fact. Issue four is overruled.

### CONCLUSION

Except as otherwise provided herein, having overruled each of Roberson's issues, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

28